IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

LIEU THAN,                                )
                                          )
                Plaintiff,                )       TC-MD 220028R
                                          )
        v.                                )
                                          )
DEPARTMENT OF REVENUE,                    )
State of Oregon,                          )
                                          )
                Defendant.                )       **DECISION**

Plaintiff appealed Defendant's Notice of Assessment, dated October 19, 2021, for the

2018 tax year, challenging increases to her income from the sale of two properties and from a

bank deposit analysis of three of her accounts. A remote trial was held on August 29, 2023.

Lieu Than appeared and testified on her own behalf. Kelly Young, auditor, appeared and

testified on behalf of Defendant. Plaintiff's Exhibits A and B, and Defendant's Exhibits A

through G were received into evidence.[1]

## I. STATEMENT OF FACTS

During the 2018 tax year Plaintiff was employed, worked as a real estate agent, traded in

investment properties, and managed three rental properties belonging to her family. Defendant

audited Plaintiff for the tax year at issue and increased her net income to include two properties

she fixed and flipped, as well as increased her gross income based on unaccounted-for deposits

identified during a bank deposit analysis of Plaintiff's accounts.

/ / /

/ / /

---

[1] Plaintiff marked her exhibits with letters instead of numbers in error. Thus, the court will identify
Plaintiff's and Defendant's exhibits in the parentheticals.

A.	*Adjustments to Net Income for Properties Purchased and Sold*

1.	*Freemont street property*

a.	Purchase costs

Plaintiff purchased the Freemont Street property on April 30, 2018, for $303,000.  (Ptf Ex A-12.)  Plaintiff incurred standard acquisition costs including lender fees, escrow, title fees, and taxes totaling $12,029.24.  (*Id.*)  The total purchase costs equal $315,029.24.

b.	Holding costs

During the holding period, both parties acknowledge certain expenses were incurred, including electrical inspection ($119.84), construction work ($2,508), photography ($175), auction fees ($9,090), appliances ($2,462.55), utilities ($97.62 and $107.64), and purchase of a refrigerator ($1,600).  (Def Pre-trial Memo.)

The parties dispute construction costs from Double Tree Construction.  (Ptf Ex A-9 to A-11.)  Plaintiff presented three construction documents, labeled "proposal," with handwritten annotations suggesting cash payments totaling $30,460.  Plaintiff testified that these cash payments were sourced from various family members, though no contemporaneous cash withdrawals or independent verification were provided.  Defendant disallowed these expenses for lack of substantiation.  Additionally, Plaintiff claimed $5,542.77 in loan interest as part of holding costs, which Defendant excluded from its calculations.  (Ptf Ex A-23.)[2]  The total holding costs are $21,703.42.

c.	Sales costs

Plaintiff sold the Freemont Street property on October 24, 2018, for $390,000.  (Def Ex

---

[2] The interest figure here only includes interest through October 2018.  The December interest figure was included in the payoff and is covered in the next section.

F-10.)  She incurred costs of sale totaling $31,578.68, but received credits for property taxes

($2,164.84) and homeowner association prorations ($21.04).  (*Id*.)  The sales price with costs

totaled $360,607.20.

### 2. *Russell street property*

#### a. Purchase costs

Plaintiff acquired the Russell Street property, in Portland, Oregon on August 28, 2017,

for $214,524.00, and incurred standard acquisition costs including lender fees, escrow, title fees,

and taxes totaling $5,721.26.  (Ptf Ex A-24.)   The total purchase costs were $220,245.26.

#### b. Holding costs

The parties generally agree on holding costs amounting to $75,982.32, covering

construction, utilities, inspection, and interest.  (Def Pre-trial Memo.)  However, Plaintiff

disputes Defendant's calculation of mortgage interest, providing statements showing anticipated

interest for November.  Defendant relied on a mortgage statement showing year-to-date interest

of $9,857.30 as of November 13, 2018.  (Def Ex F-67.)  Plaintiff did not provide

contemporaneous proof of her November payment, but cited a December sales closing statement

that logically shows the November payment was made.  That increases interest payments by

$870.67.  Additionally, Plaintiff presented evidence of construction waste disposal expenses

totaling $108.30, which Defendant omitted from its holding cost calculation.  (Ptf Ex A-42.)  The

total holding costs were $76,961.29.

#### c. Sales costs

Plaintiff sold the Russell property on December 11, 2018, for $365,000.  (Ptf Ex A-39.)

The parties largely agreed on sales costs of $21,141.73.  Plaintiff also incurred an additional

interest expense of $572.50 not included by Defendant.  Additionally, Plaintiff received a credit

for county taxes in the amount of $1,702.78. The sales price and costs total $344,988.55.

B.    *Bank Deposit Analysis*

Defendant conducted a bank deposit analysis for three accounts titled in Plaintiff's name, identifying excess net deposits of $146,828.40. Following Plaintiff's submission of trial exhibits, Defendant recalculated the unreported income as $115,882, after accounting for non-income loans, and previously reported Schedule C and Schedule E income. (Def Ex E-6.) Plaintiff asserted that certain unexplained deposits represented rental income collected on behalf of family members, though she lacked contemporaneous records or consistent accounting for each property and payment. Plaintiff further testified that some deposits represented family loans without contemporaneous promissory notes.

## II. ANALYSIS

In analyzing Oregon income tax cases, the court starts with several guiding principles. First, the federal Internal Revenue Code (IRC) applies because the Oregon Revised Statutes (ORS) defines taxable income by reference to the IRC. *See* ORS 316.022(6); 316.048.[3] Second, in cases before the court, the party seeking affirmative relief bears the burden of proof and must establish their case by a "preponderance" of the evidence. ORS 305.427. Third, deductions are a "matter of legislative grace" and the burden of proof—substantiation—is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Finally, IRC section 162 allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" IRC § 162(a). The taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. *See* IRC § 6001; Treas Reg § 1.6001–1(a).

---

[3] References to the ORS are to the 2017 edition.

A.    *Net profit from Sales of Real Estate*

In determining Plaintiff's gain from property sales, the court considers the sale price less the costs of acquisition, rehabilitation, and maintenance.  IRC § 1001.  For the Freemont Street property, the parties agree on a purchase price of $303,000 and acquisition costs of $12,028.24. The parties agreed on holding costs of $16,160.95, but the court finds an additional $5,542.77 in interest expense based upon Plaintiff's mortgage statement.  (Ptf Ex A-23.)  Net sales proceeds were $360,607.20.  Plaintiff's claimed construction costs of $30,460 lack sufficient substantiation under IRC section 6001, as no contemporaneous documentation or evidence of cash withdrawals was provided, nor pictures or other evidence of the work performed. Consequently, the court finds a net profit of $23,874.14 for the Fremont Street property.[4]

For the Russell Street property, the parties agree on a purchase price of $214,524, and acquisition costs of $5,721.26.  The parties also agreed on part of the holding costs totaling $75,982.32, but the court finds Plaintiff should be credited with $870.67 in interest expense and $108.30 for waste disposal.  The parties agree on the sale price of $365,000 and costs of sale of $21,141.73.  Additionally, Plaintiff incurred an additional interest expense of $572.50 and received a credit for property taxes in the amount of $1,702.78.  Consequently, the court finds a net profit of $47,782 for the Russell Street property.[5]  With the real estate income resolved, the court turns next to Defendant's bank deposit analysis of Plaintiff's three accounts.

/ / /

/ / /

---

[4] Sale price with adjustments of $360,607.20, minus holding costs $21,703.42 minus purchase costs with adjustments of $315,029.24.

[5] Sales price with adjustments $344,988.55, minus holding costs $76,961.29, minus purchase costs with adjustments of $220,245.26.

B.      *Bank Deposit Analysis*

A bank deposit analysis is a recognized method for identifying unreported income. *Danielson v. Dept. of Rev.*, TC-MD 160282C, WL 5158730 at *3 (Or Tax M Div, Nov 7, 2017) (quoting *Brenner v. Dept. of Rev.*, 9 OTR 299, 306 (1983)) (internal citations omitted).  As a real estate agent and manager of family rental properties, Plaintiff had a duty to segregate and account for all funds.  The court finds no consistent pattern to support Plaintiff's assertion that rental income was contemporaneously transferred from her personal account to family members' accounts, nor sufficient evidence to verify her status as a mere intermediary.  Even on occasions where a transfer appears in Plaintiff's accounts, the amounts do not correspond.  Further, the recipient accounts were not identified adequately as accounts held by others, as Plaintiff appears to be on title to several of those accounts.  Defendant's comprehensive review, including a reevaluation by auditor Young, substantiates deposits totaling $115,882 of unreported income.

### III.  CONCLUSION

After careful consideration, the court finds that Plaintiff has not substantiated the adjustments she was seeking at trial beyond a few minor adjustments to the net proceeds from the sale of the two properties.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of the 2018 tax year is allowed in part and denied in part as detailed above.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

DECISION  TC-MD 220028R                                                                    6

*This Decision was signed by Magistrate Richard D. Davis and entered on December 6, 2024.*